```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION


Colleen D. Holstein,              :

        Plaintiff,                :

     v.                           :     Case No. 2:13-cv-1188

Commissioner of Social Security,  :     JUDGE GREGORY L. FROST
                                        Magistrate Judge Kemp
        Defendant.                :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Colleen D. Holstein, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits.  That application was filed on March 24, 2010, and alleged that Plaintiff became disabled on December 20, 2007.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on June 5, 2012.  In a decision dated July 9, 2012, the ALJ denied benefits.  That became the Commissioner's final decision on October 1, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on February 6, 2014.  Plaintiff filed her statement of specific errors on May 8, 2014, to which the Commissioner responded on August 4, 2014.  Plaintiff filed a reply on August 10, 2014, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 40 years old at the time of the administrative hearing and who has a high school education, testified as follows.  Her testimony appears at pages 40-60 of the administrative record.

At the time of the hearing, Plaintiff was 5'5" tall and weighed 365 pounds.  She lived with her mother and brother.  She had worked very little since 2007 when she worked as a clerk for an oil company, a job she had held since 1989.  She did general office work for most of that time, but had gotten a promotion to office supervisor, a job which did require her to discipline and fire workers.

Plaintiff testified to being in constant pain.  It involved her back and legs, and required her to lie down at least twice a day, usually for several hours at a time.  She also had headaches four days per week, but they did not affect her functioning.  From a psychological standpoint, Plaintiff suffered from memory problems and depression.  She also became anxious around authority figures.  She suffered from crying spells as well.

The ALJ asked Plaintiff about her ability to sit, stand, and walk.  In response, she said she could stand and walk about fifteen minutes at a time and sit about thirty minutes.  Her hands would become numb and she had difficulty holding on to things.  On a typical day, Plaintiff did very little socializing, but took her medicine, showered, read a little, and watched television.  She did not often do household chores, but if she did cook a meal, she had to do so while seated.

In response to additional questions from her attorney, Plaintiff said she had taken five months of leave during her last year at work.  She trained for a phone sales job with Harry & David, but lost the job because she could not deal with customers successfully.  She believed she could lift five pounds from floor level.  Her "good days" allowed her to do some routine tasks like cooking or going grocery shopping, but on her bad days she could hardly get out of bed.  Most days were bad days.  She also had daily swelling in her ankles and feet and constant pain in her knees.

### III. The Medical Records

The medical records in this case are found beginning on page 220 of the administrative record. The pertinent records - those relied upon by Plaintiff in support of her statement of errors - can be summarized as follows. Because almost all of Plaintiff's arguments focus on errors allegedly made by the ALJ which are not directly related to the content of the medical records, and because the ones which relate to the medical records are limited to evidence concerning Plaintiff's psychological impairments, the Court will summarize only the psychological evidence, and then only briefly.

Dr. Miller performed a consultative psychological examination on August 18, 2010. Plaintiff presented as depressed and somewhat anxious. She reported short-term memory problems but appeared to be of average intelligence. Dr. Miller thought she had moderate impairments in the areas of interaction with others and maintaining attention and concentration as well as persistence in task completion, and a marked impairment in dealing with work stress, although he rated her GAF at 60. (Tr. 330-34).

Dr. Nordbrock was asked to do a mental residual functional capacity evaluation based on the record. The evaluation indicated moderate limitations in these areas: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing work activities within a schedule; sustaining an ordinary routine without special supervision; working around others; completing a normal workday and work week without interruption from psychologically-based symptoms; interacting with the public and co-workers; maintaining socially appropriate behavior; responding to changes in the work setting; traveling to unfamiliar places or using public transportation; and setting goals or making plans

independently of others.  The narrative part of the form indicates this: "Despite her functional limitations, from a psych perspective she retains the ability to perform 1-2 step tasks." (Tr. 344-47).  Another reviewer, identified only as "Barbara Clayton," completed a form which assessed the "B" criteria and which showed moderate limitations in maintaining social functioning and maintaining concentration, persistence, and pace. (Tr. 356-66).  Finally, Dr. Hoyle reviewed and confirmed Dr. Nordbrock's evaluation.  (Tr. 401).  There is no other pertinent psychological evidence in the record.

## IV. The Vocational Testimony

George W. Coleman III was the vocational expert in this case.  His testimony begins on page 60 of the administrative record.

Mr. Coleman testified that Plaintiff's position as an office clerk was semiskilled and light, and the office manager job was skilled and sedentary.

Mr. Coleman was then asked some questions about a hypothetical person who had Plaintiff's educational and work history and who could work at the light exertional level.  That person also could stand or walk for about four hours a day and sit for about six, with the option to alternate between sitting and standing every thirty minutes.  The person could not climb ladders, ropes or scaffolds, but could climb ramps or stairs occasionally and could also occasionally stoop, kneel, crouch, and crawl.  The person also had to avoid concentrated exposure to moving machinery and unprotected heights and could do only simple, routine, repetitive tasks.  According to Mr. Coleman, those limitations would preclude the person from doing any of the Plaintiff's past work, but those limitations were consistent with the performance of jobs like mail sorter, routing clerk, or counter clerk.

Next, Mr. Coleman was asked to assume that the person could work only at the sedentary level, still with a sit-stand option, and could never crawl and kneel less than occasionally. Further, any jobs that the person could do would be low stress, involving only occasional decision-making or changes in the work setting and only occasional interaction with others. Such a person could still work as an address clerk, tube operator, or pari-mutuel ticket counter, according to Mr. Coleman. If the person could not meet strict quotas or interact with others even occasionally, however, the person could not be employed. Mr. Coleman also testified that an employee could miss only four to eight hours of work per month to remain employed, and would not be permitted to lie down during the work day other than at scheduled break times.

V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 79-87 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status of the Social Security Act through December 31, 2012. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of December 20, 2007. Next, the ALJ determined that Plaintiff had severe impairments including obesity, polyarthritis with a positive ANA test, plantar fasciitis, fibromyalgia, a hernia of the ventral wall, degenerative disc disease, diabetes mellitus, depression, and anxiety. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level with

the need to alternate between sitting and standing every thirty minutes.  Also, she could not climb ladders, ropes, or scaffolds, and could only occasionally stoop, crouch, and climb ramps or stairs.  She could less than occasionally kneel and could never crawl.  She could not be around moving machinery or unprotected heights for more than one-third of a workday, and was limited to simple, routine, and repetitive tasks in a low-stress job.  She could occasionally interact with the public, co-workers, and supervisors.  The ALJ found that, with these restrictions, although Plaintiff could not perform her past relevant work, she could do those sedentary jobs identified by the vocational expert, such as address clerk, tube operator, and ticket counter.  The ALJ further found that such jobs existed in significant numbers in the regional and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues; (1) the ALJ's RFC findings were internally inconsistent and the ALJ erred in finding that Plaintiff could perform substantial gainful employment; and (2) the ALJ did not properly account for limits in concentration, persistence, and pace.  The Court analyzes these claims under the following standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based

upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. The Contradictory Findings

Plaintiff's first statement of error centers around two findings made by the ALJ. First, the ALJ found that Plaintiff could stand or walk for only about two hours total in a workday. Second, the ALJ found that Plaintiff "must alternate between sitting and standing at 30 minute intervals." (Tr. 25). If that statement is taken literally, according to Plaintiff, it means that she had to be in a standing position for a total of four hours in a workday, something the ALJ found she could not do. It is also, in Plaintiff's view, inconsistent with the capabilities described to the vocational expert; there, the ALJ described the sit-stand option as "need[ing] the option to alternate between sitting and standing at approximately 30-minute intervals...." (Tr. 62). Consequently, Plaintiff contends both that the ALJ made contradictory findings and that he did not have substantial evidence to support his finding that Plaintiff could do those jobs identified by the vocational expert even though they would accommodate someone with a sit-stand option.

The commonsense reading of the ALJ's decision is that Plaintiff is, indeed, limited to sedentary work which involves standing or walking for no more than two hours in a day, and for no more than 30 minutes at a time, since she also needed the option to sit down after 30 minutes of standing. That is the residual functional capacity described to the vocational expert, and the ALJ clearly relied on his testimony about the types of jobs someone with precisely that limitation could perform. Plaintiff does not argue that either residual functional capacity - the two-hour standing limitation, or the four-hour one which she reads into the ALJ's findings - are unsupported by substantial evidence, and Mr. Coleman testified that the jobs he identified could be done by someone who was either seated or standing. He rejected the notion that employers would not accommodate someone who was frequently shifting positions, testifying that the "essential functions" of those jobs could be performed either sitting or standing, and that employers "did not care whether or not an employee is sitting or standing so long as the essential functions of the job are capable of being performed in either position." (Tr. 70). Thus, even if the ALJ erred by making two seemingly contradictory findings, there is evidence in the record that someone who was limited in either of these two ways could still work. As a result, a remand ordered solely to clarify which limitations the ALJ actually found would not change the results of the proceedings. Any error in this regard is therefore harmless. See Rutherford v. Comm'r of Social Security, 67 Fed. Appx. 333, *1 (6th Cir. May 31, 2012)("the error is harmless as the outcome of the case would not be different..."). The same holds true for Plaintiff's argument about the finding that Plaintiff had transferable job skills; none of the jobs identified by Mr. Coleman were either skilled or semiskilled, and he did not base his testimony on any assumptions about

transferability of skills, so any error made by the ALJ in that regard had no impact on the proceedings.

### B. The Psychological Limitations

Plaintiff's second argument is that the ALJ did not properly incorporate certain psychological limitations - those dealing with her ability to maintain concentration, persistence, and pace - into his residual functional capacity finding or into the questions posed to the vocational expert. Relying on Ealy v. Comm'r of Social Security, 594 F.3d 504 (6th Cir. 2010), Plaintiff argues that a limitation to performing simple, routine, repetitive tasks does not accommodate a moderate impairment in maintaining concentration, persistence, and pace; as the Ealy court noted, quoting Edwards v. Barnhart, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005), a "hypothetical limiting claimant to 'jobs entailing no more than simple, routine, unskilled work' [is] not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace...." Ealy, supra, at 516-17. The Commissioner counters that Ealy has been limited to its facts - specifically the finding by one of the claimant's doctors that the claimant could only maintain attention in two-hour segments - and that not every case where a claimant has problems with concentration, persistence and pace must be remanded where the ALJ has not specifically accommodated those limitations, but rather has found the claimant able to do only routine, repetitive work.

The ALJ appears to have accepted Dr. Miller's findings about a moderate impairment in the area of maintaining attention and concentration, calling those findings "consistent with the medical evidence presented in this case." (Tr. 28). He also cited the opinion of Dr. Nordbrock favorably, again noting that Plaintiff had moderate limitations in all areas other than activities of daily living. Id. Thus, it does appear that, despite the absence of a more specific finding, the ALJ concluded

-9-

that the uncontradicted evidence from the mental health sources that Plaintiff had moderate limitations in the area of concentration, persistence, and pace was credible and that Plaintiff did have such limitations.  The Commissioner does not argue otherwise.

The question then becomes whether the hypothetical question posed to Mr. Coleman which elicited his testimony about the three unskilled, sedentary, sit-stand option jobs -  address clerk, tube operator, and ticket counter - adequately incorporated limitations in attention, concentration, persistence, and pace.  There was no specific limitation about such matters in the question; rather, the ALJ translated all of Plaintiff's psychological limitation into an RFC for unskilled work performed in a low stress environment (which the ALJ specifically defined as "involving only occasional decision making and changes in the work setting," (Tr. 26)) with only occasional interaction with others.  The Court must determine how well that RFC matches up with someone who is moderately impaired in her ability to maintain attention, concentration, persistence, and pace.

In the Court's view, it does not match up sufficiently well to permit the ALJ's decision to stand.  The Court recently said the following about how to interpret Ealy, in a case where the ALJ both found problems with persistence and pace and omitted any mention of these issues from the hypothetical question posed to the vocational expert:

> That omission is significant in light of Ealy's holding that a "streamlined" hypothetical omitting any pace or speed-based limitations, but restricting the claimant to the performance of simple, repetitive tasks was inadequate.  Ealy cited with approval the decision in Edwards v. Barnhart, 383 F.Supp. 2d 920, 930-31 (E.D. Mich. 2005) which observed that a claimant with an impairment in concentration, persistence and pace might not be able to perform a routine job at a consistent pace.  Ealy, 594 F.3d at 516-17.  This Court has approved limiting a claimant to simple tasks as a

-10-

>means of addressing problems with concentration, <u>see Starr v. Comm'r of Social Security</u>, 2013 WL 653280, *3 (S.D. Ohio Feb. 21, 2013), but in that case, the ALJ also limited the claimant to performing tasks in an environment without fast-paced production demands, which, the Court said, accounted for limits in persistence and pace.  The ALJ in this case did not include that restriction.  In a case like this, the Court has held that <u>Ealy</u> squarely rejected the proposition "that routine, simple jobs adequately account for deficits in memory, attention, concentration, and pace." <u>Renn v. Comm'r of Social Sec.</u>, 2010 WL 3365944, *6 (S.D. Ohio Aug. 24, 2010).  This Court has also noted that jobs including hand packer and inspector "presumably would include demands of pace or quotas that may prove incompatible with" moderate limitations in the ability to maintain concentration, persistence and pace.  <u>Willis v. Astrue</u>, 2011 WL 3566814, *6 (S.D. Ohio July 26, 2011), <u>adopted and affirmed</u> 2011 WL 3566690 (S.D. Ohio Aug, 15, 2011).  <u>See also Hambrick v. Comm'r of Social Security</u>, 2014 WL 1961945 (S.D. Ohio May 15, 2014)(remanding case where the ALJ found moderate limitations in concentration, persistence and pace, but restricted the claimant to the performance of tasks in a routine work setting and made no mention of pace or production quotas).

<u>Crooks v. Comm'r of Social Sec.</u>, 2014 WL 2608170, *6 (S.D. Ohio June 11, 2014), <u>adopted and affirmed</u> 2014 WL 2988340 (S.D. Ohio July 2, 2014); <u>see also Towe v. Comm'r of Social Security</u>, 2014 WL 1365947 (S.D. Ohio Apr. 7, 2014), <u>adopted and affirmed</u> 2014 WL 1764720 (S.D. Ohio Apr. 30, 2014).  The same reasoning applies here.  It is also interesting to note that when the ALJ did ask about pace or production-related issues, such as production quotas, it affected the vocational expert's answers, showing that these are not trivial or meaningless restrictions even in the context of unskilled work.

   The Commissioner, in a footnote, cites to <u>McNamara v. Comm'r of Social Security</u>, 2011 WL 7025855 (E.D. Mich. Dec. 1, 2011), <u>adopted and affirmed</u> 2012 WL 113541 (E.D. Mich. Jan. 13, 2012), for the proposition that "this court found a moderate impairment

-11-

in concentration, persistence or pace does not necessarily preclude the ability to perform simple, routine, unskilled work." Commissioner's Memorandum, Doc. 19, at 15 n.2.  Of course, McNamara is not a decision from "this court" and, further, it does not cite Ealy, which is controlling precedent.  Ealy, as noted above, cited Edwards v. Barnhart, 383 F.Supp. 2d 920 (E.D. Mich. 2005) with approval, but McNamara indicates that other courts within the Eastern District of Michigan have not followed it, a position hard to reconcile with Ealy's favorable reading of the case.  Finally, McNamara's statement that "a moderate limitation in concentration, pace, and persistence is encompassed in unskilled work" seems especially hard to reconcile with Ealy, and this Court, in the decisions cited above, has not reached the same conclusion.  Even if some unskilled work does accommodate moderate impairments in the ability to maintain concentration, persistence, and pace, there is evidence in this record that the jobs identified by Mr. Coleman may not.  Cases from both the Northern and Southern Districts of Ohio support a remand under these circumstances.  See, e.g., Harris v. Comm'r of Social Security, 2012 WL 3780401, *16 (N.D. Ohio July 30, 2012)("Time after time, this district has applied Ealy and remanded decisions of the Commissioner following an ALJ's hypothetical that failed to adequately convey moderate concentration, persistence, and pace difficulties"), adopted and affirmed 2012 WL 3780395 (N.D. Ohio Aug. 31, 2012); see also Willis v. Astrue, 2011 WL 3566814 (S.D. Ohio July 26, 2011), adopted and affirmed 2011 WL 3566690 (S.D. Ohio Aug. 15, 2011).  For all of these reasons, the Court finds Plaintiff's second argument to be well-taken and concludes that a remand is necessary.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings

pursuant to 42 U.S.C. §405(g), sentence four.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. _See Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge